Good morning, Your Honors. My name is Gretchen Fuselier, and I represent the petitioner appellant, Juan Tapia, in this matter. This case arises from Mr. Tapia's conviction in the state court of several counts, consisting of premeditated attempted murder, firing into an inhabited dwelling, findings of personal use of a handgun, and findings that the offenses were at the direction of a gang. Mr. Tapia, eventually, after exhausting all of his state court procedures for appeal, filed a habeas corpus petition in the district court, claiming, among other things, ineffective assistance of counsel and also conflict of interest, which violated his Sixth Amendment rights to counsel. The district court we submit violated and committed reversible error by making a decision that was contrary to clearly established federal law as determined by the U.S. Supreme Court and unreasonably found facts in its determinations. Essentially, we believe that Mr. Tapia, in his federal habeas corpus petition, in fact established that Mr. Manning, his trial attorney, actively represented conflicting interest by considering not only Juan Tapia's position during trial, as he should have uniquely done, but his considerations were basically torn between two masters because he admitted at a post-trial motion for a new trial that throughout the trial, all of his determinations were made in consideration of his client's brother's interest, who was also a co-defendant at that trial. But was there really a conflict? Your Honor, we believe so, and we believe so relying on the case primarily that we cited  The Kyler case indicates that where there is a compromise in an attorney's representation resulting in evidence that might have been used to establish reasonable doubt and was withheld established the type of conflict of interest inasmuch as it relates to a competing interest. But on a one-way street in terms of your client's interests, I mean, it seems to me the problem here is that, sure, he could have offered Pedro's testimony, but if nobody is going to believe it because there's so much other testimony that Pedro is there, then that impairs the credibility of the defense that's being put forward by suggesting that Pedro's obviously been put up to say this. Your Honor, in reading... You know, as a lawyer, you've got to be careful with the credibility of the case you're putting forward. You can't believe some piece that weighs down the rest of your case. Your Honor, I do believe that that consideration needs to be taken into consideration. However, in this particular case, and looking at this case through the perspective of both the Sanders case versus Rattel and the Kyler case itself and cases within Kyler that were referenced, there was sufficient credibility vulnerability for the two main witnesses the State used in their case-in-chief. One was Freddy Gonzalez, the person who was coming home about 2.30 at night, and the other one was his mother, Lupe Gonzalez, who was inside of her home. Lupe indicated in her cross-examination that the shooter who she identified as Juan Tapia was about 20 feet away, and she had the lights on. There were lights outside that cast a shadow that probably interfered with the clarity of her vision. The other aspect is that Freddy Gonzalez admitted during his testimony that that evening when he came home, he was suffering the effects of alcohol that he had drunk during that evening, and also admitted that he is an alcoholic. When we compare this kind of vulnerability of credibility against Steve Garcia, who was the third co-defendant who was identified during the trial, and his counsel presented testimony of an alternate brother who was a co-defendant, an hour and a half after the shooting, the trial, the jury hung on a verdict relating to Steve presumptively on this alternate shooter premise. When we look at Kyler, Kyler indicates in its holding that a lawyer certainly has to consider the witness who may be determined as recently fabricating a story, et cetera. However, in Kyler it also indicated that what might be a tactical decision by an attorney not to put on a witness is not subject to such a focus relating to the conflict of interest and ineffective assistance of counsel for conflict of interest. And we think that's what is a decisive factor in this particular case. Because the district court indicated that there was sufficient grounds to believe that Pedro Tapia would not have testified, we don't believe is the standard of determination. There was nothing that was presented to the court indicating out of either the mouth of Pedro Tapia or his attorney at the time that my client will, in fact, assert his Fifth Amendment rights. And according to Sanders v. Rattell, Mr. Manning at least should have attempted to put Mr. Tapia on to testify, especially given the fact that if one juror had some reasonable doubt, Juan Tapia would have been in at least the better position that Steve Garcia found himself in with a hung jury as opposed to a conviction resulting in a 23-year, four-month and two consecutive life term sentences. So in dissecting the dynamics of both the witnesses and the admitted conflict of interest by Mr. Manning, and I don't think there's any doubt that there was a conflict of interest, the State Court of Appeal, in its opinion, it indicated that Mr. Manning's testimony and admission during the motion for a new trial, that his decisions related to Mr. Tapia's were made not in isolation of his own, of Mr. Pedro Tapia's considerations, was disturbing. However, the district court judge found that it may have been disturbing, but it doesn't rise to the point of a conflict of interest. And I think that the State Court, I mean, the district courts were viewing, I think, it's a State prisoner, right? That's correct, Your Honor. That's a deeper standard. That's correct. So the district court has to be reviewing whether the State appeals were made in an application of clearly established federal law that was as determined by the Supreme Court. That's correct, Your Honor. That's objectively unreasonable. That's correct. So I was under the impression, though maybe I'm wrong, that the State Court, at least in part, said there's no prejudice on an ineffective assistance of counsel claim. Am I wrong in that? I thought there was no prejudice because of the testimony of the victim and the mother. The Court, and I, the Court did say that somewhat. Basically, the Court indicated that Manning reasonably, and Manning is the reference to the trial attorney, believed that Pedro's proposed testimony would have been viewed by the jury as a contrived story. Manning's decision not to call Pedro as a witness was a reasonable tactical decision made for the Petitioner's benefit. However, Kyler indicates that had we not had this other component of Mr. Manning meeting with Pedro by himself with Mr. Silva, who at the time was Pedro's attorney, saying when he met by himself, he was my agent for Mr. Tapia, Pedro Tapia, and also meeting in what we described as an anteroom meeting where other people were present. But most exacting is the district court's finding that because of Pedro Tapia's testimony, Mr. Tapia's failure to show that Pedro's testimony was not more aggressively attempted to be obtained for trial, there was no showing of a conflict of interest. And we think that that is certainly contrary to clearly established. That is what the district court said? Yes, Your Honor. I'm trying to find that in our excerpts of record. And it is, I believe, on page 56. Well, it says the court of appeals found counsel's admitted failure to consider the interests of Petitioner in isolation from those of Pedro disturbing, but nevertheless denied Petitioner's claim because there was no adverse effect. Essentially, at that point, I think that's the court relying on just that is skipping a point, and that is that if you find an actual conflict of interest, which, according to Kyler, we believe exists, you don't need to find an adverse effect on top of it under Kyler for the conflict. Did the state court find that there was an actual conflict of interest? Our position is that the state court did because the state court's quote was counsel's admitting admitted failure to consider the interest of Petitioner in isolation from those of Pedro Tapia is disturbing. However, the state court went on to find no adverse effect either. That's where we believe that the gravamen of the decision in this case lies. And the case that you're relying on is, what's the name of the game? Kyler versus Sullivan, and it's, yes. It's taken me a long time. I don't know that I have a firm grasp. Kyler says that an actual, that what you have to demonstrate must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Now, the next step in terms of prejudice, it's apparently the law that if you can demonstrate the actual conflict of interest and the adverse effect, you don't have to carry the extra step that you do like in an effective assistance of counsel claim of showing prejudice. Although that's sort of implicit in the adverse effect. That has to have an effect that's negative, but maybe you don't have to do the reasonable possibility of a different result. That's correct, because much of it is presumed. You still have to demonstrate that the conflicting interest caused something to happen bad to the presentation of your client's case. That's true, Your Honor. You have to show most likely you could have improved your client's position with evidence or tactics that were not used. And here, wouldn't we have to conclude, and if I'm wrong, tell me here, that when the state court said there's no adverse effect, that that assessment of the circumstances is objectively unreasonable? Well, Your Honor, I wouldn't go that far. So even if we would have viewed it differently under that Wiggins case, we can't give relief on that. It's got to be objectively unreasonable, which means something more than, you know, we would have ruled a little – we might have made a different judgment as a trial judge. Your Honor, that's – I would agree with that statement. However, we think that there is more, because when we look at the circumstances of Kyler, when we look at the circumstances of Saunders v. Rattell, or Sanders v. Rattell, which implicated the same Sixth Amendment violations, in Kyler, we had two attorneys who were found to represent – to have represented three defendants who were charged with the same offense. Now, that is a more onerous position to defend, and yes, the Kyler court remanded that, because it did not find that's the – that's the case. And in the – I understand what the conflict here is, though. I guess I – The conflict here, Your Honor, is that under the Sixth Amendment, Juan Tapia had a right to the representation of an attorney who focused whatever evidence that would reasonably lead him to conclude would put him into the best position possible, given the facts. So I understand what happened was Juan's attorney talked to Pedro. And Pedro said, Juan Tapia was not there that evening at the time of the shooting. I am willing to take the witness stand and testify to that. And his – and Juan's attorney told him not to do that. Correct. And Juan's attorney admitted that he – And there was some question in the State court's mind as to whether or not maybe the attorney was thinking of how Pedro would look, rather than what it might look with respect to Juan. But I – But we – if we look at the Sanders case, where we had almost the identical circumstance of a brother wanting to testify to exculpate his brother in a murder trial, as opposed to an assaulted murder – assault trial, attempted murder. There, the court indicated that there were myriads – myriads of reasons why the defendant's attorney in Sanders would have advised Sanders' brother not to testify. However, by supposition, the Sanders court concluded that that advice was given in order to protect his client's brother. And essentially, we have the same effect here. This is a Ninth Circuit case. That's correct, Your Honor. I am – How do you reconcile – I mean, we have to find a precedent determined by the Supreme Court. Well, I think that the language of the Supreme Court in Kyler is sufficient and – Do you think Kyler is sufficient? Okay. Yes. And the cases that are referenced in Kyler, for example, two attorneys representing three defendants, there was not – even though one of the attorneys said that he was just assisting the other attorney in one of the three defendants' trial, but really wasn't his representative, and the other attorney is saying that he didn't really represent the second attorney, but – I mean, the second defendant, but the third defendant. The appellate court in that particular case found that there was no conflict of interest. However, the Supreme Court indicated that because one of the attorney's decisions rested on the reluctance to damage another defendant's case, it was remanding it so that the court could take another look at whether or not there was – were, in fact, a conflict of interest. We think that is very similar to the circumstances that we are confronted with in this case. You have about two minutes left. Yes, I'll reserve that for rebuttal. Okay. Good morning, Your Honors. Peter Kwan on behalf of the Respondent. First of all, I – first of all, I disagree with counsel's assessment of the facts that an actual conflict of interest was proven below. I think that counsel's argument cannot be considered without taking into light the entire trial that was presented at the State Court. First of all, Pedrotapia's defense was alibi and that he wasn't there. That floats into giving reason why the determination by the State Courts up to this point was that, first of all, not only was Pedrotapia's defense alibi and that he wasn't there, we also have Pedrotapia's attorney telling Pedrotapia not to testify. If Pedrotapia had, in fact, testified at that belated time, which was just before trial, about the time that the jury was being selected, then the point that I made in my brief, which was that Pedrotapia's limited testimony that Kwan wasn't there, was not a shooter there, would be used by the prosecutor or could be used by the prosecutor in closing argument as a recently fabricated piece of evidence. Which would hurt? Both. It would hurt both. Absolutely. In order for Pedrotapia to have said that Kwan, who is the opponent in this case, was not there, Pedro either had to see him somewhere else or Pedro had to be there. Correct. Facts that are hard to argue in the alternative. Absolutely. He wasn't there because I wasn't there to see him. That's right. Were they tried together? Yes, they were. Was there an effort made to sever? Yes, there was. But the judge said we're going to try them together. Yes, he did. Okay. And there was no evidence that was presented during Pedro's case that Pedro had bumped into Kwan, the opponent, somewhere before. So it wasn't in either of their best interests for him to testify. As I understand it, Pedro's attorney said you can talk to Pedro. Pedro's attorney. So Kwan's attorney, you can talk to Pedro. Yes. Kwan's attorney, who is the appellant's trial counsel here, Mr. Manning, was allowed to talk to Pedro. Pedro's attorney was also present. Pedro said to Mr. Manning, the appellant's counsel, I want to say that Kwan wasn't a shooter there. And all we know from the record is that Mr. Silva, who is Pedro's attorney down at the trial level, told the court, my recommendation to Pedro was that don't testify. And that was because they agreed that you're going to hurt everybody this way. By the time that trial starts, I would submit that a competent trial defense counsel already knows what that defense is going to be. Investigation time has been spent. Witnesses have been talked to. And all of a sudden, Pedro's going to say at trial, Kwan, the appellant, wasn't there, was not a shooter. Despite the fact that all this time, and there's nothing in the record to say that Mr. Silva, Pedro's attorney, had done any kind of work towards this. But we can look at the record and assume that because Pedro's defense was alibi, not anywhere close to the shooting in this case, that Mr. Silva had already prepped his case to that point and was going to present it, was prepared to present that. The other thing that we need to look at in the entirety of this case is that Mr. Manning, appellant's trial counsel, had already lined up a series of different witnesses to say that Kwan, the appellant, was never at that shooting site anyhow. We had four witnesses, and I presented those. Do you want to touch on any of the other issues raised? Not unless the Court has other questions of me. I think that all the issues that are presented in my brief pretty much respond to the appellants. Thank you. Anything briefly? Your Honor, just briefly for a point of clarification, the inquiry whether or not a motion for severance was brought, there was a motion for severance brought prior to trial, but not on the basis of exonerating testimony that might be given against, I mean, on behalf of Kwan Tapia by Pedro Tapia. And that motion for severance was never brought by Mr. Manning, even for a tactical purpose, trying to separate the defendants from joint trials. And as we argued in our brief, given the position of Penal Code Section 1098 of California, which basically leans in favor of separation of separate trials under those circumstances, we feel that at least for a practical, tactical point of view, that motion should have been brought. We would submit it. Thank you. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case, which is.
judges: Schroeder, Gould, Clifton